ABDUAL DESEAN WILLIAMS
FULL NAME

SAME AS ABOVE
COMMITTED NAME (if different)

CALIFORNIA REHABILITATION CENTER, P.O.Box 3535
FULL ADDRESS INCLUDING NAME OF INSTITUTION

Norco, CA 92860    (FAC-A 109-114P)

BK2587
PRISON NUMBER (if applicable)

FILED
CLERK, U.S. DISTRICT COURT

MAR 1 4 2022
kam

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ABDUAL DESEAN WILLIAMS

PLAINTIFF,

v.

JOEY LIN
BRYAN MOULTON
BRETT STENNETT

DEFENDANT(S).

CASE NUMBER

EDCV22-00469-AB-Ex

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT
PURSUANT TO** *(Check one)*

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☒ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:

Plaintiff _____

_____

Defendants _____

_____

b. Court _____

_____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it

appealed? Is it still pending?) _____

f. Issues raised: _____

_____

_____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
occurred? ☐ Yes ☒ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes ☒ No

If your answer is no, explain why not _THERE IS NO GRIEVANCE PROCEDURE_

_____

_____

3. Is the grievance procedure completed? ☐ Yes ☒ No

If your answer is no, explain why not _THERE IS NO GRIEVANCE PROCEDURE_

_____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _ABDUAL DESEAN WILLIAMS_

(print plaintiff's name)

who presently resides at _CRC STATE PRISON P.O. Box 3535, NORCO, CA 92860_ ,

(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_RIVERSIDE, CALIFORNIA_

(institution/city where violation occurred)

on (date or dates) _03/29/2019_ , _____ , _____ .
(Claim I)                        (Claim II)                        (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant    _JOEY LIN_ _____ resides or works at
    (full name of first defendant)
    _4102 Orange Street_
    (full address of first defendant)
    _Riverside Police Officer_
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

    Explain how this defendant was acting under color of law:
    _Violated my 4th, 8th and 14th Amendments of the U.S._
    _Constitution._

2.  Defendant    _BRYAN MOULTON_ _____ resides or works at
    (full name of first defendant)
    _4102 Orange Street_
    (full address of first defendant)
    _Riverside Police Officer_
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

    Explain how this defendant was acting under color of law:
    _Violated my 4th, 8th and 14th Amendments of the_
    _U.S. Constitution._

3.  Defendant    _Brett Stennett_ _____ resides or works at
    (full name of first defendant)
    _4102 Orange Street_
    (full address of first defendant)
    _Detective OF THE RIVERSIDE POLICE DEPARTMENT_
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

    Explain how this defendant was acting under color of law:
    _Violated my 4th, 8th and 14th Amendments of the_
    _U.S. Constitution_

4. Defendant _____ resides or works at
   (full name of first defendant)

   _____
   (full address of first defendant)

   _____
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

   Explain how this defendant was acting under color of law:

   _____

   _____

5. Defendant _____ resides or works at
   (full name of first defendant)

   _____
   (full address of first defendant)

   _____
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

   Explain how this defendant was acting under color of law:

   _____

   _____

**D. CLAIMS***

**CLAIM I**

The following civil right has been violated:

4th, 8th, and 14th AMENDMENTS OF THE UNITED STATES
CONSTITUTION

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

On 03/29/2019, Officer's Joey Lin and Officer Bryan Moulton, apprehended me, alleging that I had a felony arrest warrant for PC 245 from Detective Brett Stennett.

Officer Joey Lin, also stated in his police report that he conducted a records check and confirmed the felony warrant and took me into custody on 03/29/2019, with his patrol partner Officer Bryan Moulton. (EXHIBIT "A" is Officer Joey Lin's police report; File Number 19000961-001, page 7 of 7).

Officer Joey Lin, has not only falsified his police report, but has illegally arrested me without had obtained jurisdiction to do so and I am currently still illegally confined as a result to that arrest.

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**CIVIL RIGHTS COMPLAINT**

Continued Page of 5 of 26

①

- Supporting Facts:

EXHIBIT "B" is Detective Brett Stennett's, police report stating that he didn't obtain an arrest warrant until 04/02/2019, four (4) days after I was arrested which indicates that I was illegally arrested because jurisdiction is a requirement that cannot be waived, which was never obtained by the arresting Officers. (EXHIBIT "B" is Detective Brett Stennett's, police report, File Number 190007648-002, page 4 of 5).

EXHIBIT "C" is the unsigned arrest warrant presented by Detective Brett Stennett, dated 03/29/2019, indicating there wasn't authorization given to these Officers to arrest me and allege this crime on me.

Detective Brett Stennett, alleged to have had probable cause to seek an arrest warrant, alleging that the alleged victim later identified the suspect as me. EXHIBIT'S "D", "E", "F", "G" and "H", refutes Detective Brett Stennett's, accusations which is live testimony, trial transcripts of the alleged victim's Flores-Banuelos testimony.

EXHIBIT'S "I" and "J", are REPORTER'S TRANSCRIPT'S from June 28, 2019, PROCEEDING with Ms. Banuelos, disclosing to the court, the prosecutor Ms. Allison Gray, and my defense attorney that I was not the man that assaulted her and when she identified me at the preliminary Hearing as the assailant who assaulted her, Detective Brett Stennett, told her to identify me out side the courtroom.

- these Officer's have illegally arrested me and alleged me of had committed this crime.

EXHIBIT "K", is also being presented as facts proving that I haven't committed this crime that these Officer's have arrested me for and alleged on me, the document is a statement from my alibi witness given to "IGNACIO RUIZ", who was my assigned

← (Continued Page →

Continued Page of 5 of 6
②

Supporting Facts:

Public Defenders' "KAREN DONG'S" investigator, disclosing that I wasn't even in the city of "Riverside" on the night the alleged crime happen, I was in the city of Perris California.

EXHIBIT "L", is a detailed report from my assigned private investigator "EDWARD C ACOSTA" (P.I.12843) stating that he also spoke with alibi witness and interviewed Robinson.

EXHIBIT "M", is a statement from the Deputy District Attorney "Allison Gray", disclosing that she continued through an interview with the alleged victim that "Broon" done the assault but the man in custody is not "Broon."

EXHIBIT "N", is a CDC-128-B, GENERAL CHRONO, as evidence that I've been physically assaulted by multiple inmates because of this alleged crime.

Furthermore, Detective Brett Stennett, has illegally conducted the photographic lineup, conducted by him on 03/28/19, with the alleged victim, because there is "no" record of Detective Brett Stennett, being authorized or permitted to conduct any investigation in this case until April 17, 2019. EXHIBIT "O", is that evidence.

EXHIBIT'S "P", "Q" & "R", is the "INCIDENT DETAILED REPORT," narrated by either of the responding officers at "LOMA LINDA MEDICAL CENTER", where the alleged victim was being seen for medical treatment, indicating that on 03/10/2019, Officers Zandate David and Dane Wilkinson, were the (Pre-assigned) dispatched Officers and Officers Cheyenne Allen and Robert Lindewall were the (Primary) Officers dispatched to "LOMA LINDA MEDICAL CENTER". On page 1 of 6 (EXHIBIT "P") underneath comments it states "IF SALLY FLORES CALLS IN PLEASE CONTACT STENNETT AT..." TIME AND DATE 9:31:06 04/30/2019, indicating Detective Brett Stennett, testified perjured testimony while under oath

⟸ Continued Page ⟹

Continued Page of 5 of 6
(3)

Supporting Facts:
when he said that he received the initial report on 03/10/19.
    EXHIBIT "S", is Detective Brett Stennett's, trial test-
imony alleging to have had authorization to conduct an
investigation by alleging to have received the initial report
on March 10, 2019.

    EXHIBIT "T," is the alleged arrest warrant
that Detective Brett Stennett, alleges to had obtained on
04/02/2019, stating that he reviewed the initial report on
03/27/2019. Furthermore, the "EXHIBIT" signed by the JUDICIAL
OFFICER" is still dated 03/29/2019, still violating my due process
rights.

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

Physical and mental suffering relief, physical because I've been physically assaulted by multiple inmates because of these alleged charges, resulting with injuries that are currently unknown because I refuse to seek medical attention because I feel that I'm being targeted by staff in retaliation of previous "PETITION FOR WRIT OF HABEAS CORPUS" that I've filed concerning this illegal conviction of which all parties have been notified of.

Forced restraint (DURESS) which has keep me from attending several of my immediate family members "WAKES", and "BURIALS", which has been painful and very unpleasant (ANGUISH).

Accountability relief, the arresting officers are legally obligated (liable) for every (youth) whom they have caused to fail daily struggles that were faced on the day to day basis, whom I've done my best to inspire, in place of the "PARENT."

For the above reasons I believe that I'm entitled for the (35) months that I've been illegally confined to (2 million dollars) (2,000,000).

Distress that has been forced on me and my family, resulting from this illegal arrest. Humiliation and Defamation of character.

03/10/2022
*(Date)*

*(Signature of Plaintiff)*

EXHIBIT A



## Riverside Police Department
### Case Report

File Number:
190009511-001



**Assisting Officers:**
Sgt. Bucy
Detective Stennett

**Evidences:**
1.5 grams of FTP Methamphetamine
Glass bulbous pipe with burned white crystallized substance inside.

**Narrative:**
On 03/29/19, partner Officer Moulton and I were working patrol in the City and County of
Riverside, California. We were in police uniform and in a marked patrol vehicle. At
approximately 2003 hours, we were by 14th St. and Main St. where we observed a subject sitting
on a bench at the Main St. Car Wash located at 4201 Main St.

I recognized the subject as S/Williams and knew him from prior contact for approximately
four years. I also knew S/Williams had a felony warrant (RIV 001445) for 245 PC from
Detective Stennett. I conducted a records check and confirmed S/Williams' felony warrant. I
contacted S/Williams and took him into custody for the warrant. S/Williams told me that he has
"dope" in his right sock. Officer Moulton removed a small black plastic bindle containing white
crystallized substance inside. Partner Officer Moulton later tested the white crystallized
substance with a new NIK test kit and it returned positive as Methamphetamine. I conducted a
search incident to arrest on S/Williams and located a bulbous glass pipe with burned white
crystallized substance in his front left pant pocket. Based on my training and experience, the
glass pipe was a paraphernalia commonly used to smoke Methamphetamine. S/Williams was
transported to Orange St. Police Station and later booked into RPDC for 11377(a) HS, 11364(a)
HS, and the warrant. Officer Moulton booked the evidence into the evidence locker located at
Orange St. Police Station. S/Williams' personal property was booked for safe keeping.

No further details.

Att: Officer Joey Lin, claims that I had a
felony warrant out for my arrest on March 29,
2019, from Detective Stennett. He also indicated
that he conducted a records check and confirmed
the felony warrant.

Att: Officer's Joey Lin's police report

RIVERSIDE POLICE DEPARTMENT

EXHIBIT #C#B




**Riverside Police Department**
**Officer Report**

File Number:
190007648-002

**Narrative:**

On 04-02-19, I obtained a ................................ identified Officer I. Lin who is assigned to patrol in the D.............................................................. armed Officer Lin and Officer M................................................................. arrant. I learned they arrested S/W......................................................... same area where the cri...................................................................... tation to interview S ...............................

I learned fro.................................................................... bdual the day before i.................................................................... e Main Street Car V ...............................

I learned fro.................................................................... f club at the time they.................................................................... ere S/Williams ...............................



I obtained the above picture from Officer M............ body worn camera showing S/Williams during the time of the past contact on 03-07-19

Att: Detective Stennett, states, in his police report that he didn't obtain an arrest warrant until April 2 2019. Indicating I was illegally arrested by Officer Joey Lin, on March 29, 2019. Furthermore, the date indicates this report wasn't printed until April 16, 2019.

Att: Detective Stennett's police Report.



EXHIBIT "E" "C"

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

☐ **BANNING** 311 E. Ramsey St., Banning, CA 92220
☑ **BLYTHE** 265 N. Broadway, Blythe, CA 92225
☐ **INDIO** 46-200 Oasis St., Indio, CA 92201

☑ **RIVERSIDE** 4100 Main St., Riverside, CA 92501
☐ **MURRIETA** 30755-D Auld Rd., Ste, 1226, Murrieta, CA 92563

RI-OTS47

| | FOR COURT USE ONLY |
|---|---|
| LAW ENFORCEMENT AGENCY *(Name and Address)*: <br> Riverside Police Department <br><br><br> DEFENDANT: Williams, Abdual Desean <br><br> TELEPHONE NUMBER: <br> E-MAIL ADDRESS *(Optional)*: bstennett@riversideca.gov    FAX NO. *(Optional)*: <br> BADGE/ID#: 1374 | <br><br><br><br><br><br> CASE NUMBER: <br> 19-000-7648 |

### DECLARATION BY LAW ENFORCEMENT FOR WALK-THROUGH ARREST WARRANT AND ORDER

[**Instructions to Law Enforcement:** Arrest Warrants are processed by the Court on a walk-through basis ONLY when <u>extraordinary circumstances</u> associated with public safety and/or the interests of justice require that the processing of the warrant be expedited.]

The undersigned hereby declares that processing this Arrest Warrant on a walk-through basis is appropriate because of the following facts:
V/Flores-Banuelos told Officer Allen that a suspect she knew as "Brown" had struck her n the face causing major injury. The incident occurred on 03-08-19, at around 2230 hours at Main Street and 14th Street in the City and County of Riverside. V/Flores-Banuelos later identified the suspect as S/Williams, Abdual Desean. S/Williams had confronted and made threats to the victim. The suspect said "I should beat the fucking hell out of you with this golf club." The suspect then punched her once in the jaw "and socked the hell out of me." This caused the victim to sustain a fractured jaw. The victim and suspect are transient. The victim fears further injury from the suspect. Because the victim has few resources, I fear the suspect may have an opportunity to cause additional harm to the victim or others. I have been unable to locate the suspect at this time.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

03/29/19
_____
(Date)

_____
(Signature of Declarant)

### ORDER

Good cause appearing, the requested Arrest Warrant for the above named defendant will be processed on a walk-through basis.

_____
(Date)

_____
(Judge of the Superior Court)

ATT: UNSIGNED ARREST WARRANT PRESENTED BY DETECTIVE STENNETT; INDICATING OFFICER JOELLIN NEVER OBTAINED JURISDICTION TO MAKE AN ARREST AND HE FALSIFIED HIS POLICE REPORT.

Adopted for Mandatory Use
Riverside Superior Court
RI-OTS47 [Rev. 4/19/11]

**DECLARATION BY LAW ENFORCEMENT FOR WALK-THROUGH ARREST WARRANT AND ORDER**

riverside.courts.ca.gov/localfrms/localfrms.shtml



EXHIBIT D

1   together and brought this forward and put it through -- I'm

2   not sure why, but what they said was it binds my jawline and

3   my bone together, to be mended back together.

4       Q.    BY MR. TALOA:  Okay.  And what you just indicated for

5   the record is that there were plates inserted in your mouth to

6   either side, and were they flush against your teeth?  Where

7   exactly were the plates inserted in your mouth?

8       A.    Oh, internal.  They're internal.  We can't see them.

9   They're inside, they're under my bone line, and -- and my jaw,

10  like it's a -- it's my jaw, I guess.  It's two.  I thought I

11  gave you guys that picture.

12      Q.    We have it.  Okay.  So your testimony today is that,

13  still, no pain resulted from those injuries?

14      A.    A lot of uncomfortableness.  A little bit of pain

15  now, now, after, like, with the wire.

16      Q.    Okay, but no pain during the incident, correct?  No

17  pain when you were getting surgery for that assault, correct?

18      A.    Correct.

19      Q.    Just a little bit now?  In your mouth?

20      A.    Yeah, like, if I move the wires I'm, like, ouch,

21  ouch, I mean, that type of pain.

22      Q.    Okay.  Now, let's get back to the issue of ID.  Do

23  you see the person in this courtroom that assaulted you that

24  day?

25      A.    No.

26      Q.    Okay.  Are you familiar with the individual that I am

27  standing by now?  For the record I'm standing next to the

28  defendant.

EXHIBIT E

1    A.   He was the first one in the courtroom when we came

2    in, the first time I was called.

3    Q.   Is that the only way that you know him?  I'm asking

4    if you know this individual.

5    A.   I don't know what you're saying.  I can't -- you want

6    me to tell you the truth.  The truth is, I thought I seen him

7    on TV when OJ was on TV, that's the truth.

8    Q.   Ms. Flores, I'm asking you a direct question.  Do you

9    or do you not --

10   A.   Personally --

11   Q.   -- know him?

12   A.   -- no, I don't.

13   Q.   Ms. Flores, just let me finish the question.  Okay.

14   Do you know this individual, yes or no?

15   A.   No.

16   Q.   Okay.  Now, you're familiar with Detective Stennett?

17   A.   Yes.

18   Q.   You've had several conversations with him, have you

19   not?

20   A.   Yes.

21   Q.   Do you recall coming to the office on March the 28th

22   to participate in a six-pack identification?

23   A.   Come to where?

24   Q.   Our office, the DA's office.  Do you recall that?

25   A.   To see Detective Stennett?

26   Q.   Yes.

27   A.   No.

28   Q.   Really?  You didn't go to the Family Justice Center?

EXHIBIT F

1    A.    Yes.

2    Q.    Okay.  Is that where you met Detective Stennett?

3    A.    Oh, yes.  Yes.

4    Q.    Okay.  And you participated in a lineup on that day,

5    did you not?

6    A.    Yes.

7    Q.    And do you recall who you picked out of that

8    six-pack?

9    A.    Yes.

10   Q.    Who was that individual?

11   A.    If you show me pictures, I'll show you.

12   Q.    Sure.

13         MR. TALOA:  Your Honor, I'm holding what's been

14   premarked for identification as People's 9.

15         THE COURT:  Very well.

16         MR. TALOA:  I'm showing the defendant.

17         THE DEFENDANT:  Yes, sir.

18         MR. TALOA:  May I approach?

19         THE COURT:  Yes.

20   Q.    BY MR. TALOA:  And do you recognize the document I'm

21   showing you now?

22   A.    The front, I don't.  But the pictures I do.

23         THE COURT:  You have to speak up.

24         THE WITNESS:  The front, I don't, but the pictures I

25   do.  That's not what he showed me.  There was four on top and

26   four on the bottom.

27   Q.    BY MR. TALOA:  Okay.  So do you recognize this

28   document, yes or no?

EXHIBIT G

1    A.    The front page, no.  The pictures are familiar.

2    Q.    You recognize this picture?

3    A.    That's switched.  That's my picture but that is

4    switched.

5    Q.    Okay.  So your testimony today is that --

6    A.    He showed me four pictures.

7    Q.    Just let me finish my question, okay.  Your testimony

8    today is that at some point the six-pack was changed?

9    A.    Yes.

10    Q.    Okay.  This is not the one that you signed?

11    A.    Yes.

12    Q.    Okay.  This is not the six-pack where you identified

13    the defendant as your assailant?  That's your testimony today?

14    A.    I'll find the police station.  That's wrong.  That's

15    not the one.  I know that the justice center does have films,

16    cameras right there where we were at.  That is wrong.

17         THE COURT:  Did you get the answer to that?  For the

18    record, the microphone is creating some issues for us.  Did

19    everybody hear the answer?  Did you get the answer?

20         THE REPORTER:  Yes, I did.

21         THE COURT:  Everybody heard the answer.  Okay.

22    Q.    BY MR. TALOA:  Now, you have accused Detective

23    Stennett --

24    A.    Of switching.

25    Q.    -- Ms. Flores, I'm going to ask you to wait until the

26    question is out, okay?  You've accused Detective Stennett of

27    suggesting the answer to you when you took that six-pack; is

28    that correct?

EXHIBIT "H"

1    A.   I repeated what he said to me.  I didn't accuse him.

2    I repeated what he said to me, factually.

3         THE COURT:  Stay back a little bit more, okay?  Go

4    ahead.  Just talk louder, maybe keep away from the mic.  Go

5    ahead.

6    Q.   BY MR. TALOA:  My question is, have you or have you

7    not accused Detective Stennett of suggesting who to pick in

8    this six-pack lineup?

9    A.   I have not accused him yet, but I will in the future

10   if that's what you want.

11   Q.   Well, didn't you call the office and leave a message

12   suggesting that Detective Stennett told you that the right guy

13   was in number four?

14   A.   Well, like I said, I repeated what he said to me, but

15   I did not accuse him of anything --

16   Q.   Ms. Flores that is not what I --

17   A.   -- because I didn't see that picture yet.  And there

18   was -- it wasn't switched.

19   Q.   Ms. Flores --

20        THE COURT:  Okay.  Next question.

21   Q.   BY MR. TALOA:  That was not answered.

22        Did you or did you not leave a message with our

23   office suggesting that Detective Stennett advised you that the

24   defendant was really in slot number four, yes or no?

25   A.   I repeated what he said to me.  You can recall it, I

26   -- it's on my cell phone.  I mean, it's that easy.  Yes, I

27   did.  I repeated what he said to me.  I didn't accuse him of

28   anything.  I repeated what he said to me.

EXHIBIT "I"

1   on Monday, folks.

2          MS. GRAY:  And Your Honor, yesterday we were

3   informed by the clerk that some medical records from

4   Riverside Community Hospital have come in.  I do have the

5   victim here present to address any HIPAA issues, if I can

6   bring her in.

7          THE COURT:  Bring her in.

8          THE DEFENDANT:  Just pain medicine and X-rays.

9          THE COURT:  Were you addressing the Court, sir?

10          THE DEFENDANT:  No.

11          THE COURT:  Okay.

12          Is this Ms. Banuelos?

13          MS. GRAY:  It is, Ms. Flores-Banuelos.

14          THE COURT:  Ms. Flores-Banuelos, the People have

15   subpoenaed some medical records.  They purport to be

16   medical records of yours.

17          Do you have any problems -- are you objecting to

18   them being released to the People?

19          MS. FLORES-BANUELOS:  No, but I do have a

20   statement.  He's not the man.

21          THE COURT:  Okay.

22          MS. FLORES-BANUELOS:  On that day that I left

23   court, the first day that I came -- because I was really

24   nervous.  The courtroom is really small.  And the officer

25   told me, "He's in there."  So, you know, "Don't look at him

26   if you don't want to.  I can understand you're scared."  So

27   I went in there.

28          He said, "He looks a little different.  Don't

ANN MORALES, CSR                                    7

EXHIBIT "J"



```
 1  worry."  And they look different when they go to jail.
 2  That's what he told me.  So I said, "Okay."  But that's not
 3  him.  When I left here, I was walking back to the justice
 4  center, I kept reviewing it in my mind.  He was in the
 5  line-up, but he's not the man.
 6          THE COURT:  Okay.
 7          MS. FLORES-BANUELOS:  And I went to the counsel,
 8  everything that day.  And I've told everybody, and
 9  nobody -- and I kept saying, "Is he in jail?  I don't want
10  to get in trouble.  It really is not him."
11          THE COURT:  Okay.  So you've told us.  The
12  prosecutor has heard that.  Mr. Williams's attorney has
13  heard that.
14          MS. FLORES-BANUELOS:  I'm so sorry.
15          THE COURT:  Mr. Williams has heard that.  With
16  respect to the medical records, at this time I will order
17  them released to the People for purposes of copying for
18  both sides.
19          MS. FLORES-BANUELOS:  That's not him.
20          THE COURT:  And you let folks know.  I don't know
21  what the -- I don't know enough about your case to -- I
22  think I know what you're saying and how it would be
23  significant in the case, but I don't know enough about this
24  case to know what that means in terms of --
25          MS. FLORES-BANUELOS:  I was attacked.
26          THE COURT:  I understand.  I don't know enough
27  about the case against Mr. Williams to know how significant
28  what you just said is, but you have provided the
```

EXHIBIT K

**DEFENDANT:** Abdual Desean Williams

CASE #: RIF1901449



## Riverside County Public Defender
## Bureau of Investigations
## Investigation Report



| Defendant: | Abdual Desean Williams | | Case #: | RIF1901449 |
|---|---|---|---|---|
| Attorney: | Karen Dong | | Date of Report: | 06/18/2019 |
| Investigator: | Ignacio Ruiz | | | |
| Statement of: | Michael Robinson DOB ▓▓▓▓ | | Interview Type: | In person | Phone X |
| Contact Info: | Mailing Address ▓▓▓▓▓▓▓ | | | | |
| | Did not have a current living address Cell # ▓▓▓ | | | | |

On Tuesday June 18, 2019, at approximately 2.49 pm, I spoke with Michael Robinson from my desktop telephone. I identified myself as an investigator with the Riverside County Public Defender's Office working with the attorney who represents, Abdual Williams. Michael agreed to speak with me and he related the following information.

For the last 6 to 7 years, Michael has known Abdual. Michael considers Abdual like a son. Michael met Abdual while Michael was volunteering. Michael took a liking to Abdual.

On Friday March 8, 2019, Michael picked up Abdual from either the bus station in Perris or went to Riverside to pick up Michael. Michael could not remember how he picked up Abdual but was either of the two.

Abdual and Michael went to the home on Glimmer Way in Perris. Michael was making repairs to the rental home because Michael was moving out of the home. Michael wanted to get his deposit back. Abdual helped Michael make the repairs to the home. Abdual stayed on the couch inside the home.

On Tuesday at about noon, Michael drove Abdual to the Perris transient station in downtown Perris on 4th street. Michael was not sure where Abdual was going but believed was going to stay with a friend in Riverside.

On Thursday Michael met with the landlord agent and did a walkthrough of the house to get his deposit back. After that Michael had not heard from Abdual. While Michael was out volunteering he heard the Abdual was arrested.

Michael does not know of any other nicknames that Abdual goes by. Michael only calls Abdual, Abdual or son. Michael gave me permission to contact him at a later time if needed and our conversation ended.

Ignacio Ruiz -investigator

TO: PRO-PER ABDUL DESEAN WILLIAMS          EXHIBIT L
FROM: EDWARD C. ACOSTA P.I 12843
CASE: PEOPLE VS ABDUL DESEAN RIF 1901449          FOR YOUR INFO
SUBJECT: DETAIL OF SERVICES

7-8-19    4:30pm RECIEVED 20 HOUR APPOINTMENT FROM HON. THOMAS
          D. GLASSER, DEPT. 55, HALL OF JUSTICE. 4:30p to 5:30p VIA
          INTERNET OBTAINED CASE HISTORY. REGULAR HOURS. 1.0 @ 32 per    $ 32.⁰⁰
          * AS OF THIS DATE 19.0 HOURS REMAIN *

7-9-19    8:45a to 9:15a DROVE 27 miles TO RIVERSIDE FROM OHINO.
          9:15am to 9:30am PICKED UP PRO-PER LEGAL PACKAGE. 9:30p
          TO 10:30p ATTENDED COURT PROCEEDINGS TO UNDERSTAND WHAT
          PRO-PER NEEDS WILL BE SINCE THIS INVESTIGATOR HAD NO REAL
          KNOWLEDGE OF CASE. GAVE PRO-PER LEGAL PACKAGE AND TOLD HIM I
          WILD CONTACT HIM AT 5:30am FOR HIS NEEDS. 10:30am to 11:15am
          DROVE BACK 27 miles TO CHINO OFFICE. 4:30pm to 5:15pm DROVE 27 miles
          TO PRESTLEY DETENTION TO MEET WITH PRO-PER. 5:15p to 6pm JAIL
          WAIT. 6p together MET WITH PRO-PER AND WAS GIVEN BRIEF OF CASE AND
          HIS NEED TO CONTACT WITNESS ROBINSON. 6:30p to 7:30p CONTACTED
          AND INTERVIEWED WITNESS ROBINSON. 7:30p to 8:15p DROVE BACK 27
          miles TO CHINO OFFICE. 8:30pm to 10:30pm DRAFTED REPORT
          REGULAR HOURS 5.0 @ 32 per _____ $160.00
          TRAVEL HOURS 2.0 @ 16 per (SAME AS 1.0 REGULAR HOURS) _____ $32.00
          TOTAL MILES 108, @ 0.158 _____ $62.64
          * AS OF THIS DATE 13.0 HOURS REMAIN *

7-10-19   1:15pm to 2pm DROVE 27 miles TO RIVERSIDE HALL OF JUSTICE DEPT. 55. 2pm to 3:00pm
          DELIVERED WITNESS INTERVIEW REPORTS AND COPIES FOR PRO-PER TO GIVE TO D.A.
          3pm to 3:45pm RETURNED TO OHINO OFFICE.
          REGULAR HOURS 1.0 @ 32 per. _____ $32.00
          TRAVEL HOURS 1.50 @ 16 per (SAME AS 0.75 REGULAR HOURS) $24.00
          TOTAL MILES 54 @ 0.58 per _____ $31.32
          * AS OF THIS DATE 12.25 HOURS REMAIN *

EXHIBIT M

Sally thinks someone is hiding "Brown" and she said she has seen "Brown" on the street near the law library. Sally said she thinks "Brown" is tired of hiding.  Sally said "Brown" has hit many people.  Sally said the assault on her was an "electronic crime".  I asked her to explain.  She said there is an electronic device that "Brown" had in his possession and he used this device to cause her jaw damage.

I confirmed with Sally that "Brown" did the assault but the man in custody is not "Brown".  Sally said "Brown" was the hitman and he was sent by her family members who do not like her.

Much of what Sally said before and during this interview did not make sense to me.  I concluded the interview at 1221 hours

DISTRIBUTION:  DDA Allison Gray

Att: This is a statement from the District Attorney Allison Gray, confirming that she spoke with the witness and confirmed with Sally that "Brown" did the assault but the man in custody is not "Brown".

Again, there is no trial testimony from no witness identifying the defendant as "Brown" or "Abdual", other then Hearsay which is inadmissible in a court of law, District Attorney Mr. Tabor, who was given the case to try by Allison Gray, knew that I had a alibi witness that wasn't subpoenaed who could have testified that I wasn't even in Riverside the day this crime happened that Indicates that I was deliberately vindictively prosecuted.

11

NAME and NUMBER: WILLIAMS, ABDUL    BK2187    DORM 306-17U    CDC-128-B (Rev. 4/74)

On Friday, February 18, 2022, at approximately 0900 hours, **WILLIAMS**, A. (BK2187, 306-17U) was interviewed in the Facility C Sergeant's Office regarding possible enemy/safety concerns. Specifically, **WILLIAMS** was physically assaulted in Dorm 306 by unidentified inmates.

**WILLIAMS** was asked can he identify any enemies within Dormitory 306. **WILLIAMS** stated no he cannot identify any enemies however due to **WILLIAMS** being physically assaulted within 306 it is apparent he has safety concerns. **WILLIAMS** claims multiple unidentified inmates walked up to him and started battering him. **WILLIAMS** was unwilling to identify said inmates.

To alleviate any further issues **WILLIAMS** was rehoused on Facility A.

As evidence by his signature below, inmate **WILLIAMS** agrees with this decision to rehouse him on Facility A.

At this time **WILLIAMS** was able to account for all his personal property and confirm that ALL his property is present during the time of his move as evidence by his signature below.

Also, **WILLIAMS** was informed to contact staff immediately should he be threatened or fear for his safety.

Orig: Central File
CC: CCI
Inmate

_____
WILLIAMS, A. (BK2187)

_____
J. FISHER
Correctional Sergeant Facility C
California Rehabilitation Center

Date:   February 18, 2022      GENERAL CHRONO      CALIFORNIA REHABILITATION CENTER

EXHIBIT "O"

```
 1              RIVERSIDE, CALIFORNIA; APRIL 17, 2019
 2              BEFORE THE HONORABLE WILLIAM R. CHIDSEY
 3              THE COURT:  Welcome to Department 55, Riverside
 4    Superior Court.  I'm William Chidsey.  I'm assigned to
 5    Department 55.  I'm retired from Los Angeles.  I've been
 6    retired for about nine years, spent the last ten years in
 7    South Central, Los Angeles County Superior Court, hearing
 8    criminal cases including multiple preliminary hearings.
 9              The matter has been sent to me for preliminary
10    hearing.  That's entitled The People of the State of
11    California versus Abdual Williams, RIF1901449.
12              It appears Mr. Williams is present with his counsel.
13              Counsel, will you please state your appearance for
14    the record.
15              MS. CABRERA:  Yes.  Patricia Cabrera on his behalf,
16    Your Honor.
17              THE COURT:  On behalf of the People?
18              MS. GRAY:  Good morning, Your Honor.  Allison Gray
19    for the People.
20              And seated to my left is Detective Brett Stennette.
21    I would ask to have him designated as my investigating officer
22    at this time.
23              THE COURT:  He may be.
24              MS. GRAY:  Thank you, Your Honor.
25              THE COURT:  All right.  You may call your first
26    witness, and I'll be right back.
27                        (Pause in proceedings.)
28              MS. GRAY:  Your Honor, before I call my first
```

EXHIBIT F

LPD19031000045793    4/30/2019 9:33:26 AM  CSI    Page 1 of 6

## Incident Detailed Report



Incident #:  LPD19031000045793

**Summary**

| | | | |
|---|---|---|---|
| Location: | 4401 MAIN | | |
| Loc Name: | MAIN ST CAR WASH | | |
| City: | RIVERSIDE | | |
| Loc Descr: | *87 AT LOMA LINDA MEDICAL CTR 11234 ANDERSON, LOMA LINDA | | |
| Building: | | Subdiv: | |
| Floor: | | Apt/Unit: | |
| Status: | Closed | Created: | 18:50:10 03/10/2019 |
| Inc Type: | 242 | Agency Type: | L |
| Mod Circ: | R | Priority: | |
| Agency ID: | PD | Area: | |
| Sector: | 1 | Beat: | |
| Report #: | | | |
| Disposition: | RPT | | |

**Dispatch**

Unit(s):  PD/3R16 (Officers: PD/David Enduste, PD/Jane Wilkinson), PD/3R58 (Officers: PD/Cheyenne Allen, PD/Robert Lindewall) (Primary)

**Comments**

9:31:06 04/30/2019    1695    OP08
***IF SALLY FLORES CALLS IN PLEASE CONTACT STENNETT AT ████████

18:53:46 03/10/2019    1995    OP02
4RVR000SP13.IN
DATE:03-10-19*TIME:18:53*
MATCHED ON:*L/N*F/N* BD
DMV RECORD FOR LAW ENFORCEMENT USE ONLY

SEX:FEMALE*HAIR:BROWN*EYES:BRN*HT:5-00*WT:143*

18:50:58 03/10/2019    1395    OP02

RIVERSIDE POLICE DEPT - Restricted Information - Unauthorized Release PROHIBITED
District Attorney Copy

EXHIBIT "Q"

LPD19031000045793          4/30/2_19 1:03:26 AM   CSI          Page 4 of 6

Unit Location:  City: : NULL (RIVERSIE      Desc:: NULL (*87 AT LOMA LINDA MEDICAL CTR 11234 ANDERSON, LOMA LINDA), Loc Name:: NULL (OCCD AT THE CAR WASH, Location:: NULL (4401 MAIN)

| 19:18:30 3/10/2019 | UNIT STAT | 1852 | OP08 |
| Unit Status | | | Unit ID: PD/3R16 |
| Status: C (DS) | | | |
| 19:18:30 3/10/2019 | UNIT FRE | 1852 | OP08 |
| Unit Freed: PD/3R16 | | | |
| 19:17:53 3/10/2019 | PRIM UNIT | 1852 | OP08 |
| Primary Unit | | | PD/3R58 (PD/3R16) |
| 19:17:53 3/10/2019 | PRIM UNIT | 1852 | OP08 |
| Primary Unit | | | PD/3R58 (PD/3R16) |
| 19:17:38 3/10/2019 | DISP | 1852 | OF03 |
| Dispatch:  AlarmLevel: 0, AssignedUnitWithOfficers: PD/3R58 (Officers: PD/Allen Cheyenne, PD/Lindewall Robert), DispatchedTime: 2019-03-10 19:17:38 | | | |
| 19:17:38 3/10/2019 | UNIT MONE | 1852 | OP08 |
| Unit Location:  City: : RIVERSIDE  Loc Desc: *87 AT LOMA LINDA MEDICAL CTR 11234 ANDERSON, LOMA LINDA, Loc Name:: OCCD AT THE CAR WASH, Location:: 4401 MAIN | | | |
| 19:17:38 3/10/2019 | UNIT STAT | 1852 | OP08 |
| Unit Status | | | Unit ID: PD/3R58 |
| Status: DS (C) | | | |
| 19:17:38 3/10/2019 | DISPA | 1852 | OP08 |
| Dispatch | | | Assigned Unit: PD/3R58 (Officers: ) |
| 19:02:13 3/10/2019 | UNIT STAT | 1937 | 3841 |
| Unit Status | | | Unit ID: PD/3R16 |
| Status: DS (C) | | | |
| 19:02:13 3/10/2019 | PRIM | 1937 | 3841 |
| Primary Unit | | | PD/3R16 (NULL) |
| 19:02:13 3/10/2019 | DISP | 1937 | 3841 |
| Dispatch | | | Assigned Unit: PD/3R16 (Officers: ) |
| 19:02:13 3/10/2019 | INCSTAT | 1937 | 3841 |
| Incident Status: IncStatName: Active (Stacked) | | | |
| 18:53:46 3/10/2019 | CMNTS | 1385 | OP02 |

RIVERSIDE POLICE DEPT - Restricted Information
District Attorney Copy
3/2019 4:47:50 PM unauthorized Release PROHIBITED
RIVERSIDEDR

EXHIBIT "R"

**Comments**
4RVR000SP13.IN
DATE:03-10-19*TIME:18:53*
MATCHED ON:*L/N*F/N* BD
DMV RECORD FOR LAW ENFORCEMENT USE ONLY
[                        NAME:FLORESBANUELOS SALLY



| | | | |
|---|---|---|---|
| 18:52:33 3/10/2019 | | 1385 | OP02 |

Person Address                                          Role:
First: SALLY                                            Last: BANUELOS
Phone:                                                  Address:
Contact: No                                             Is Property Siezed: 0

| | | | |
|---|---|---|---|
| 18:51:34 3/10/2019 | | 1852 | OP04 |

Premimaz Check
Title: UN-REINFORCED MASONRY          Title: UN-REINFORCED MASONRY
Title: UN-REINFORCED MASONRY          Title: UN-REINFORCED MASONRY
Title:                                 Title: UN-REINFORCED MASONRY
Title:                                 Title:
Title:                                 Title:

| | | | |
|---|---|---|---|
| 18:51:34 3/10/2019 | | 1852 | OP04 |

Incident Updated. Street Cross: Latitude: 33.975740
(33.976191), Location: 4-60 MAIN 117.37 MAIN) Longitude: -
117.379018 (-117.378221), Validation: est Precise (StreetIntersection)

| | | | |
|---|---|---|---|
| 18:51:34 3/10/2019 | | 1852 | OP04 |

Jurisdiction                                           Area:
Sector:                                                Beat: P-14
Rprt Dist:

| | | | |
|---|---|---|---|
| 18:51:13 3/10/2019 | | 1385 | OP02 |

Incident Timeout Reset

| | | | |
|---|---|---|---|
| 18:51:13 3/10/2019 | | 1385 | OP02 |

Incident Status: DispatchName: Stacked (Pending)

| | | | |
|---|---|---|---|
| 18:51:13 3/10/2019 | | 1385 | OP02 |

Dispatch (PreAssigned). Alarm1 Assigned:DispatchedUnitsWithOfficers:
PD/3R16 (Officers: PDZandate Chad - I Johnson Dane).
DispatchedTime: 2019/03-10 18:51:06

| | | | |
|---|---|---|---|
| 18:51:13 3/10/2019 | | 1385 | OP02 |

Dispatch                                               Assigned Unit: PD/3R16 (Officers: )

| | | | |
|---|---|---|---|
| 18:50:58 3/10/2019 | | 1385 | OP02 |

CONFIDENTIAL — Restricted Information
Attorney Copy
Unauthorized Release PROHIBITED
2019 4:47:00 PM

EXHIBIT 5

1    A.    There's a testing process, a written test, as well as
2    an oral test.  If you pass those tests and you place high
3    enough, you may be selected.
4    Q.    All right.  So it's a competitive process, then?
5    A.    Yes, sir.
6    Q.    Okay.  Now, at some point, you became involved in
7    this case; is that correct?
8    A.    Yes, sir.
9    Q.    And do you recall approximately when?
10   A.    I believe I received the initial report sometime
11   around March 10th.
12   Q.    And is that how it works?  So there's an initial
13   investigation and then something would be transferred to a
14   detective for follow-up?
15   A.    Yes, sir.
16   Q.    Okay.  After receiving the file in this case, what
17   did you do?
18   A.    Well, I believe I had no way to contact the victim at
19   the time, but I was contacted by the victim at a certain
20   point, sir.
21   Q.    Okay.  And what did she communicate to you?
22   A.    She communicated to me initially that she wanted to
23   press charges and she was -- she would be able to identify the
24   suspect.
25   Q.    Okay.  And the sentiment that she expressed in that
26   initial conversation with you, did it continue over the course
27   of your interactions with her?
28   A.    Yes.

EXHIBIT "I"

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

| | |
|---|---|
| ☐ BANNING 135 N. Alessandro Rd., Banning, CA 92220 | ☐ MURRIETA 30755-D Auld Rd., Murrieta, CA 92563 |
| ☐ BLYTHE 265 N. Broadway, Blythe, CA 92225 | ☒ RIVERSIDE 4100 Main St., Riverside, CA 92501 |
| ☐ INDIO 46-200 Oasis St., Indio, CA 92201 | |

RI-CR040

**PEOPLE OF THE STATE OF CALIFORNIA**

vs.

**DEFENDANT:** Williams, Abdual Desean

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 29 2019

V. Ramirez

CASE NUMBER:
19-000-7643     RIF1901449

### DECLARATION IN SUPPORT OF ARREST WARRANT
### (2 Page Limit Except in Unusual Cases)

The undersigned, **Brett Stennett**, declares that he/she is a **Detective** (title) employed by the **Riverside Police Department** in the County of **Riverside**.

That he/she has investigated a reported crime of **245 (A) (4) P.C., Assault with Great Bodily Injury**.

That he/she alleges and states the following to be true:

On 03-27-19, I reviewed the initial report of a 242 P.C., Battery report prepared by Officer C. Allen and learned the following:

On 03-10-19, Officer Allen and Officer Lindewall responded to Loma Linda Medical Center at 11234 Anderson Street and spoke to V/Flores-Banuelos. V/Flores-Banuelos was at the hospital receiving treatment for a broken jaw. She told Officer Allen that a subject she knew as "Brown" had struck her in the face causing her injury. The incident occurred on 03-08-19, at around 2230 hours at Main Street and 14th Street in the City and County of Riverside. The location of occurrence was the Main Street Car Wash at 4401 Main Street.

☒ See attached for additional information.

Wherefore, declarant prays that an arrest warrant issue for the arrest (during the day or night) of: **Williams, Abdual**

| LAW ENFORCEMENT: | JUDICIAL OFFICER: |
|---|---|
| I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct. | ☒ Approved          ☐ Disapproved |
| | Bail: $130,000     Date: 3/29/19 |
| Date: 03-29-19 | |
| (SIGNATURE) | (SIGNATURE) |
| Det. Brett Stennett | Marc R. Fisher |
| (PRINT NAME) | (PRINT NAME) |

Adopted for Mandatory Use
Riverside Superior Court
RI-CR040 (Rev. 01/19/16)

**DECLARATION IN SUPPORT OF ARREST WARRANT**

riverside.courts.ca.gov/localforms/localforms.shtml

Proof of Service by Mail (CCP § 1013(a) & 2015.5; 28 USC 1746)

I declare that:

I am a resident of the County of RIVERSIDE , California. I am over the age of eighteen years. My residence address is:

California Rehabilitation Center, P.O. Box 3535, Norco, CA 92860

On 03/10/2022 I served the attached CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C §1983

on the UNITED STATES DISTRICT COURT in said case, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully paid in the United States mail at CRC STATE PRISON, P.O.Box 3535, Norco, CA 92860

addressed as follows GEORGE E. BROWN, JR. Bldg & U.S. Courthouse 3470 TWELFTH STREET, RIVERSIDE, CA 92501-3801

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on (date) 03/10/2022 ,

at CRC STATE PRISON, NORCO , California.

Type or print name: ABDUAL JESEAN WILLIAMS

Signature:



FOREVER / USA

US POSTAGE $ 001.00°
PITNEY BOWES
ZIP 92860
02 4W
0000349427 MAR 11 2022

C.R.C.
STATE PRISON

George E. Brown, Jr. Bldg & US Courthouse
3470 Twelfth Street
Riverside, California, 92501 - 3801

RECEIVED
CLERK U.S. DISTRICT COURT

MAR 14 2022

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIV

ABDUAL DESEAN WILLIAMS
BK2187  FAC A 109 - 114P
California Rehabilitation Center
P.O. Box 3535
Norco, CA 92860

LEGAL MAIL !

3-10

LEGAL MAIL